IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOL K. MORGAN,<br><br>    Plaintiff,<br><br>  v.<br><br>COUNTRYWIDE HOME LOANS, INC.,<br><br>    Defendant.<br>_____/ | No. C 06-04766 SI<br><br>**ORDER GRANTING DEFENDANT'S PETITION TO COMPEL ARBITRATION** |

Defendant Countrywide Home Loans, Inc. ("Countrywide"), has filed a petition to compel arbitration. Having considered the papers submitted, and for good cause shown, the Court GRANTS defendant's petition to compel arbitration.

**BACKGROUND**

In 2005, plaintiff Christol Morgan was a manager at a loan branch office of Wells Fargo Home Mortgage in San Leandro, California. On April 1, 2005, plaintiff completed and signed an application for employment with defendant Countrywide. *See* Brown Decl., Ex. 1.[1] The application included a section entitled "Conditions of Employment," which stated, among other conditions: "I understand that in order to work at Countrywide I must execute an arbitration agreement." *Id.* Plaintiff initialed the

---

[1] Countrywide submitted the Brown Declaration along with its reply brief. The Brown Declaration and the Reply contain a much more detailed factual narrative than any of the papers previously filed by either of the parties in this Court. The prior papers, including plaintiff's Complaint and defendant's Petition to Compel Arbitration, mention only an arbitration agreement signed by plaintiff on June 15, 2005. The Brown Declaration presents for the first time a variety of other relevant documents, including an arbitration agreement signed considerably earlier than June 15, 2005. Plaintiff has not controverted the facts contained in the Brown Declaration.

"Conditions of Employment" section at various points, and further signed and dated the application, thereby certifying that "I have read and I understand and agree to the terms of the foregoing . . . ." *Id.*

The application packet completed by plaintiff also included a two-page "Mutual Agreement to Arbitrate Claims." *Id.* Plaintiff signed and dated this agreement on April 1, 2005. *See id.* A representative of Countrywide signed the agreement on May 18, 2005. *See* Brown Decl., Ex. 3. The application packet also included a one-page informational sheet entitled "Questions and Answers About the Mutual Agreement to Arbitrate Claims." *See* Brown Decl., Ex. 1.

On April 27, 2005, Stacey Proud, Countrywide VP Area Sales Manager, sent plaintiff a document confirming an offer of employment, and setting out the terms and conditions of the offer. *See* Brown Decl., Ex. 2. Among other conditions, the offer letter stated: "Employment at Countrywide is contingent upon successful completion of a background investigation and execution of an Arbitration Agreement, which we will keep on file." *Id.* Plaintiff signed and dated this offer letter on May 2, 2005. *Id.* On or about May 5, 2005, plaintiff began work as the manager of Countrywide's Santa Cruz, California office.

On June 14, 2005, Countrywide requested via e-mail that plaintiff re-sign the arbitration agreement because Countrywide's "Company policy requires that the HR Service Center maintain an original" copy of the signed arbitration agreement; plaintiff had only sent Countrywide a photocopy of the agreement he signed on April 1, 2005. *See* Brown Decl., Ex. 4. Attached to the e-mail was a PDF file containing the arbitration agreement. Plaintiff signed the agreement on June 15, 2005, *see* Complaint, Ex. A, but Countrywide never received it, *see* Brown Decl. ¶ 10.

Because Countrywide did not receive any response from plaintiff to the June 14, 2005 e-mail, on September 20, 2005, it sent plaintiff a notice requesting that he send a signed original of the agreement to Countrywide. *See* Brown Decl. ¶ 10. Countrywide again received no response, and sent plaintiff another reminder on October 24, 2005. *See id.* On October 25, 2005, plaintiff signed the arbitration agreement and forwarded the original to Countrywide. *See* Brown Decl., Ex. 5. Upon receipt, on October 28, 2005, Countrywide stamped the agreement with the signature of the Managing Director of the Human Resources department. All of the arbitration agreements sent between the parties, including the document signed April 1, 2005, the document signed June 14, 2005, and the document

2

signed October 25, 2005, are identical.

Plaintiff's employment with Countrywide ended on or about April 18, 2006. On August 7, 2006, plaintiff filed a Complaint in this Court alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, fraudulent misrepresentation of the nature of the work in violation of California Labor Code section 970, non-payment of wages in violation of California Labor Code section 229, and intentional infliction of mental distress. The Complaint also contains a claim for "rescission of arbitration agreement because of fraud or duress," alleging that when he signed the arbitration agreement on June 15, 2005, he did so because he "thought that if he did [not] agree with the arbitration, he would be unemployed." Complaint ¶¶ 29. Plaintiff attached to the Complaint a copy of the arbitration agreement that he signed on June 15, 2005. On October 10, 2006, Countrywide filed the instant petition to compel arbitration.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *See Cohen v. Wedbush, Noble Cooke, Inc.,* 841 F.2d 282, 285 (9th Cir. 1988).

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* In determining whether to issue an order compelling arbitration, the court may not review the merits of the dispute, but must limit its inquiry to (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid agreement to arbitrate, and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991), *cert denied*, 503 U.S. 919 (1992). If the answer to each of these queries is affirmative, then the court must order the parties to

arbitration in accordance with the terms of their agreement. 9 U.S.C. § 4.

"When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56." *McCarthy v. Providential Corp.*, 1994 U.S. Dist. LEXIS 10122 at *6 (N.D. Cal. 1994). In considering a motion to compel arbitration which is opposed on the ground that no valid agreement to arbitrate was made, a district should give to the opposing party the benefit of all reasonable doubts and inferences that may arise *Id.* at *6-7 Only when there is no genuine issue of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).

"The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Standard Fruit*, 937 F.2d at 475; *cf. Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985) (holding that the FAA "leaves no place for the exercise of discretion by a district court"). Moreover, the scope of an arbitration clause must be interpreted liberally and "as a matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24, 103 S. Ct. at 941. Hence, "[a]n order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960).

In interpreting the validity and scope of an arbitration agreement, the courts apply state law principles of contract formation and interpretation. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998); *Hyundai America, Inc. v. Meissner & Wurst GMBH & Co.,* 26 F. Supp. 2d 1217, 1218-19 (N.D. Cal. 1998).

## DISCUSSION

**I.    Fraud and duress**

Plaintiff first argues that there is a genuine issue of fact as to whether the parties entered into a valid agreement to arbitrate. Plaintiff contends that the agreement is not valid because Countrywide

4

induced him to sign it through fraud and duress. With respect to fraud, according to plaintiff, he "was induced to sign the arbitration agreement by the nondisclosure that he would be required to sign an arbitration agreement to be employed. Because that fact was not disclosed, Defendant led Plaintiff to quit his job with Wells Fargo Mortgage Company and become an employee of Defendant." Opp. at 6:3-5. Contrary to plaintiff's assertion, the evidence shows that Countrywide fully disclosed to plaintiff that signing an arbitration agreement was a condition of his hiring. As discussed above, Countrywide repeatedly disclosed this fact in the application for employment packet, which plaintiff completed and signed on April 1, 2005, and in the offer letter, which plaintiff signed on May 2, 2005. *See* Brown Decl., Exs. 1-2.[2] There is thus no dispute that Countrywide did not fraudulently fail to disclose the arbitration agreement requirement to plaintiff before he began his employment.

With respect to duress, plaintiff contends that "[h]aving left his job [at Wells Fargo], the demand that he sign the arbitration agreement or be fired was duress." Opp. at 7:13-14. Plaintiff thus suggests that Countrywide lured him into quitting his job at Wells Fargo, hired him, and only then required him to sign the arbitration agreement. Even assuming that such facts could constitute duress, the evidence shows, as discussed above, that plaintiff knew of the arbitration agreement requirement well before Countrywide hired him. The fact that Countrywide did not get an original copy of the signed arbitration agreement on file until October 28, 2005, does not negate the fact that plaintiff knew that he was required to sign an arbitration agreement, and that he signed such an agreement, before he was hired.

## II.   Signing of the agreement

Plaintiff next argues that there is no evidence that Countrywide signed the arbitration agreement, and it is therefore unenforceable. Despite plaintiff's contention, the evidence shows that Countrywide signed the arbitration agreement. The agreement that plaintiff signed on April 1, 2005 was signed by a Countrywide representative on May 18, 2005, and the agreement that plaintiff signed on October 25,

---

[2] Again, as discussed above in footnote 1, the application packet and offer letter were brought to the Court's attention for the first time in Countrywide's Reply and the accompanying Brown Declaration. Plaintiff has not filed anything to suggest that these documents are not reliable evidence.

2005 was signed by a Countrywide representative on October 28, 2005. *See* Brown Decl., Exs. 3, 5.[3]

### III. The wage claim

Plaintiff's final argument is that the arbitration agreement does not cover plaintiff's claim for unpaid wages under California Labor Code section 229. Section 229 provides, in pertinent part: "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." In *Perry v. Thomas*, 482 U.S. 483 (1987), the Supreme Court ruled that the Federal Arbitration Act preempts California Labor Code section 229. Plaintiff's contention is therefore without merit, and his claim for unpaid wages is subject to the arbitration agreement.

### CONCLUSION

For the foregoing reasons the Court GRANTS defendant's petition to compel arbitration. Because the operative documents were first presented by defendant in its reply papers, proceedings in this Court are STAYED for a period of thirty days from the date of this Order, to allow plaintiff the opportunity, if he wishes it, to controvert the authenticity of the evidence newly presented in Countrywide's Reply and the Brown Declaration. Should plaintiff fail to do so within thirty days, the action will be DISMISSED in favor of the arbitration proceedings. (Docket No. 4)

**IT IS SO ORDERED.**

Dated: January 8, 2007

SUSAN ILLSTON
United States District Judge

---

[3] These signed arbitration agreements were also first presented to the Court only with defendant's Reply.